IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CRESCENT HEIGHTS R & D, LLC,
a Foreign limited liability company, and
IC, LLC, a Florida limited liability company,

       Plaintiffs,            CASE NO. 13 - 0 9 6 2 5 C A 2 0

vs.

BOOMERANG SYSTEMS, INC.,
a Foreign for profit corporation,

       Defendant.
_____/

## SUMMONS

TO EACH SHERIFF OF THE STATE AND OF OTHER STATES:

      YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint or petition in this action on defendant.

Serve:          BOOMERANG SYSTEMS, INC.
            CORPORATION SERVICE COMPANY, Registered Agent
            2711 Centerville Rd., Suite.400
            Wilmington, DE 19808

      Each defendant is required to serve written defenses to the complaint or petition on Plaintiff's attorney, whose address is:

          Lowy and Cook, P. A.
          Ronald S. Lowy
          501 N.E. First Avenue, Suite 200
          Miami, FL 33132

within 20 days after service of this summons of that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

          DATED:   MAR 1 5 2013

          HARVEY RUVIN As Clerk of said Court

          By:_____



EXHIBIT
COMPOSITE
"E"

3-15-2013

☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION<br>☒ CIVIL<br>☐ DISTRICTS<br>☐ FAMILY<br>☐ OTHER | CIVIL COVER SHEET | CASE NUMBER<br>13-U 9 62 3 CA 2 U |
|---|---|---|

| PLAINTIFF | VS. DEFENDANT | CLOCK IN |
|---|---|---|
| CRESCENT HEIGHTS R & D, LLC,<br>a Foreign limited liability company, and<br>IC, LLC, a Florida limited liability<br>company, | BOOMERANG SYSTEMS, INC.,<br>a Foreign for profit corporation, | THE ORIGINAL FILED<br><br>MAR 15 2013 |

The civil cover sheet and the information contained here does not replace the filing and service of pleadings or other papers as required by law. This form is required by the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statute 25.075. See instructions and definitions on reverse of this form.

TYPE OF CASE (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x in both the main category and subcategory boxes.

☐ 001 - Eminent Domain
☒ 003 - Contracts and Indebtedness
☐ 010 - Auto Negligence
☐ 022 - Products Liability
☐ 023 - Condominium
☐ Negligence - Other
    ☐ 097 - Business Governance
    ☐ 098 - Business Torts
    ☐ 099 - Environmental/Toxin Tort
    ☐ 100 - Third Party Indemnification
    ☐ 101 - Construction Defect
    ☐ 102 - Mass Tort
    ☐ 103 - Negligent Security
    ☐ 104 - Nursing Home Negligence
    ☐ 105 - Premises Liability - Commercial
    ☐ 106 - Premises Liability - Residential
    ☐ 107 - Negligence - Other
☐ Real Property/Mortgage Foreclosure
    ☐ 108 - Commercial Foreclosure $0 - $50,000
    ☐ 109 - Commercial Foreclosure $50,001 - $249,999
    ☐ 110 - Commercial Foreclosure $250,000 - or more
    ☐ 111 - Homestead Residential Foreclosure $0 - $50,000
    ☐ 112 - Homestead Residential Foreclosure $50,001 - $249,999
    ☐ 113 - Homestead Residential Foreclosure $250,000 or more
    ☐ 114 - Non-Homestead Residential Foreclosure $0 - $50,000
    ☐ 115 - Non-Homestead Residential Foreclosure $50,001 - $249,999
    ☐ 116 - Non-Homestead Residential Foreclosure $250,000 or more
    ☐ 117 - Other Real Property Actions $0 - $50,000
    ☐ 118 - Other Real Property Actions $50,001 - $249,999

☐ 119 - Other Real Property Actions $250,000 or more
☐ Professional Malpractice
    ☐ 094 - Malpractice - Business
    ☐ 095 - Malpractice - Medical
    ☐ 096 - Malpractice - Other professional
☐ Other
    ☐ 120 - Antitrust/Trade Regulation
    ☐ 121 - Business Transactions
    ☐ 122 - Constitutional Challenge - Statute or Ordinance
    ☐ 123 - Constitutional Challenge - Proposed amendment
    ☐ 124 - Corporate Trust
    ☐ 125 - Discrimination - Employment or Other
    ☐ 126 - Insurance Claims
    ☐ 127 - Intellectual Property
    ☐ 128 - Libel/Slander
    ☐ 129 - Shareholder Derivative Action
    ☐ 130 - Securities Litigation
    ☐ 131 - Trade Secrets
    ☐ 132 - Trust Litigation
☒ 133 - Other Civil Complaint
    ☐ 009 - Bond Estreature
    ☐ 014 - Replevin
    ☐ 024 - Witness Protection
    ☒ 080 - Declaratory Judgment
    ☐ 081 - Injunctive Relief
    ☒ 082 - Equitable Relief
    ☐ 083 - Construction Lien
    ☐ 084 - Petition for Adversary Preliminary Hearing
    ☐ 085 - Civil Forfeiture
    ☐ 086 - Voluntary Binding Arbitration
    ☐ 087 - Personal Injury Protection (PIP)

CLK/CT 96 Rev. 12/09

Clerk's web address: www.miami-dadeclerk.com

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☐ No ☒

REMEDIES SOUGHT (check all that apply):

☒      monetary;

☒      non-monetary declaratory or injunctive relief;

☐      punitive

NUMBER OF CAUSES OF ACTION: [ 6 ]

(specify) Fraud in the Inducement, Equitable Rescission, Contract Rescission for Mutual Mistake, Breach of Contract, Specific Performance, and Declaratory Relief

IS THIS CASE A CLASS ACTION LAWSUIT?

☐ Yes

☒ No

HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?

☒ No

☐ Yes    If "Yes", list all related cases by name, case number, and court.

_____

_____

_____

IS JURY TRIAL DEMANDED IN COMPLAINT?

☒ Yes

☐ No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature _____    Florida Bar # _____ 501069 _____
            Attorney or party                                   (Bar # if attorney)

Ronald S. Lowy _____         _____ 03/15/13 _____
(type or print name)                                          Date

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CRESCENT HEIGHTS R & D, LLC,
a Foreign limited liability company, and
IC, LLC, a Florida limited liability company,

      Plaintiffs,

CASE NO. 13 - 09 62 5 CA 20

vs.

BOOMERANG SYSTEMS, INC.,
a Foreign for profit corporation,

      Defendant.

_____/

THE ORIGINAL FILED

ON   MAR 1 5 2013

IN THE OFFICE OF
CIRCUIT COURT OF DADE
FLORIDA

## COMPLAINT

COMES NOW, the Plaintiffs, CRESCENT HEIGHTS R & D, LLC (hereinafter referred to as "CH") and IC, LLC (hereinafter referred to as "IC")(hereinafter collectively referred to as "BUYER"), by and through the undersigned counsel, and hereby sue the Defendant, BOOMERANG SYSTEMS, INC. (hereinafter referred to as "SELLER") and in support thereof, states as follows:

## JURISDICTION AND VENUE

1.     This is an action for fraud in the inducement, equitable rescission of agreement, contract rescission for mutual mistake, breach of contract, specific performance, and declaratory relief. The action seeks equitable relief and damages in excess of fifteen thousand dollars ($15,000.00), exclusive of interest, costs, and attorney's fees.

3-15-2013

2.     Venue is proper in Miami-Dade County because the events giving rise to BUYER's claims occurred in Miami-Dade County, the cause of action accrued in Miami-Dade County, the contract was entered into and breached in Miami-Dade County, and the contract provides that all actions shall be in Miami-Dade County.

## PARTIES

3.     CH is a Delaware limited liability company registered as a foreign limited liability company authorized to transact business in Florida, with its principal place of business located at 2200 Biscayne Blvd., Miami, Florida 33137.

4.     IC is a Florida limited liability company with is principal place of business located at 2200 Biscayne Blvd., Miami, Florida 33137.

5.     .SELLER is a Delaware for-profit corporation with its principal place of business located at 355 Madison Avenue, Morristown, New Jersey 07960, SELLER has the authority to own property and carry on its business in the state of Florida, performs substantial business in Florida, and the claims underlying this action arose from SELLER's operation and/or conduct of business in Miami-Dade County.

6.     All conditions precedent to filing this action have been performed or waived.

7.     BUYER seeks to submit all exhibits referenced herein to the Court under seal to maintain any confidential, proprietary information contained therein. Accordingly, BUYER shall file a motion requesting that the Court enter an order instructing the Clerk of the Court to file all exhibits to this Complaint under seal.

2

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8.      CH is engaged in the development of real estate and is presently developing a commercial retail project located at 1826 Collins Avenue, Miami Beach, Florida 33139 (hereinafter referred to as the "Project"). IC is the legal owner of the Property.

9.      The Project is located in the area of Miami Beach, Florida known around the world as "South Beach", which is renowned for its art deco architecture and facilities as well as high-end retail shopping, dining, and entertainment, and hotel accommodations. The area is also well known for its vehicular traffic congestion and limited parking options.    The Project is surrounded by some of South Beach's most popular hotels, including the Shelbourne, Shore Club, and Dorchester.

10.      The Project is intended to be designed, managed and operated consistent with other high end retail centers in South Beach and house a three-level restaurant with an all glass exterior and view of Collins Avenue. The space was anticipated to offer a state of the art, if not unique, automated parking facility for 139 vehicles which will distinguish the experience for restaurant patrons I and the surrounding hotels and businesses, while at the same time provide cost savings and therefore, profit to the Buyer.

11.  . The automated parking facility is intended to allow a driver to drive a vehicle into a "loading bay" immediately inside the parking facility, park and exit the vehicle, and then input the owner's expected time of return to retrieve the vehicle on a computerized kiosk and obtain a parking ticket.  The owner then

3

leaves the facility to enjoy the purpose of their visit to either the Project or the area. The vehicle is then transported through an automated system to a protected storage area inside the facility, where it is stored until the owner returns, pays the parking cost and retrieves the vehicle, all through an automated system which results in the vehicle being returned to the parking bay area upon the owner's payment and command. The process is intended to be cost efficient and profitable to the BUYER and avoid difficulty in locating parking spaces, improper parking of vehicles in available spaces, overcrowding of the parking facility, safety of vehicles and belongings, and to greatly improve and enhance the overall dining, entertainment, and shopping experience of its customers.

12.    The SELLER is in the business of designing, engineering, manufacturing, and installation of automated vehicle parking and self-storage facilities.

13.    In 2009, the parties commenced negotiations for the development of the automated parking facility (hereinafter referred as the "Parking System") to be installed at BUYER's commercial Project. The BUYER informed the SELLER of the parking needs of the Project, including the ability to hold 139 vehicles within the facility on a single occasion and without hindering or limiting the retail space within the Project. The SELLER represented that it possessed the knowledge and ability to design and install an automated parking facility to fulfill the BUYER's parking needs.

14.    In February, 2009 and March, 2009, the SELLER provided BUYER with Parking System proposals intended to induce the BUYER to contract with

4

the SELLER for the construction of the automated parking facility consistent with the SELLER's particular desires. (Copies of proposals prepared by SELLER and provided to BUYER in February, 2009 and March, 2009 shall be filed under seal and marked respectively as Exhibit "A" and Exhibit "B".)

15.     The proposals included detailed descriptions of the function and operation of the automated parking system and the "Competitive Advantages" of contracting with the SELLER to construct the parking system including, but not limited to, the following explicit representations: "Key personnel have an extensive, demonstrated track record in engineering, fabricating, installing and supporting hundred of pieces of complex automated equipment in 28 countries around the world"; "we design systems so that no one piece of machinery can fail or shut down the system"; "Where possible, we select components with a long track record of outstanding performance in harsh environments to ensure our systems are safe, reliable and provide trouble free service for years"; "We are confident that if you...compare our solution to the competition, they will invariably find our system to be the EASIEST and MOST COST EFFECTIVE to service and maintain"; and, "If you have a question, just ask, and we'll give you an answer, because the buck stops here." (See Exh. "A").

16.     Additional representations which the SELLER made for the purpose of inducing the BUYER to contract with the SELLER included:  "One of the advantages of Boomerang Systems, Inc. domestic U.S. production and design capabilities is that we have the flexibility to accommodate the specific client needs to ensure this parking system works the way you want it to, rather than the

5

way some inaccessible design group thought you should want it to work." (See Exh. "B").

17.    In making its inducements to the BUYER, the SELLER was fully aware of the space constraints within the Project and the need for the parking facility to store and park 139 vehicles at a time. The SELLER intentionally induced the BUYER with representations, which conveyed that the SELLER typically accommodated similar space constraints with facilities capable of parking an average of 200 vehicles. For instance, one of the SELLER's proposals states that the "typical medium" of a "Boomerang Parking System configuration" is "200 vehicle spaces averaging 3 operations per space per day with two hoists'" and, "[b]ecause of the tight space constraints for the Collins Avenue Project, and the desire to accommodate as many vehicles as possible without the need for drivers to fold in standard mirrors" the SELLER represented that it would modify its systems in order to accommodate the BUYER's requirements. (See Exh. "B").

18.    The SELLER also expressly represented, "In designing this automated parking solution for 1826 Collins Ave, we have tried to maximize the rate of vehicle processing, while meeting vehicle handling objectives and keeping the overall cost of the system reasonable....With this system configuration, we project the mechanisms of the parking system itself will have the capacity to process approximately 60 vehicle storage and retrieval operations per hour." (See Exh. "A").

6

19. The BUYER specifically relied upon the inducements made by the SELLER in selecting the SELLER to perform the work and provide the services and products necessary to build and operate a state of the art, automated parking facility at the Project located in the heart of South Beach.

20. Accordingly, on October 26, 2009, the parties entered into an "Agreement for Design-Build Installation of Automated Parking Facility and Software License Between Boomerang Systems, Inc. and Crescent Heights R & D, LLC" (hereinafter referred to as the "Agreement"), a copy of which shall be filed under seal and marked as Exhibit "C".

21. The Agreement sets forth the terms and conditions for the design, engineering, installation, and purchase of the Parking System with the capacity to store 139 vehicles. SELLER agreed to design, sell, install, and assign to BUYER the Parking System described in the Software and System Description attached as Schedule A to the Agreement. (See Exh. "C", p. 19 "Schedule A").

22. In addition to the design, engineering, and installation of the Parking System, SELLER was required to provide software to control the Parking System, known as TrafficMaster™. (See Exh. "C", p. 20).

23. Pursuant to the express terms of the Agreement, SELLER was obligated to "retain qualified specialty designers and contractors... to design and install all components" of the Parking System and the operating software for the Parking System (See Exh. "C", pg. 1, para.1.1). The SELLER also expressly agreed to ensure that all work performed on behalf of the SELLER would be

7

performed by persons "qualified to perform the Work assigned to them" by SELLER (See Exh. "C", pg. 8, para. 6.3).

24.     The SELLER also warranted that "the Software will perform substantially in accordance with the documentation" which included, but was not limited to, documents which represented that the Seller will provide "a facility which shall function as an automated car park capable of storing 139 steel pallets which shall be...capable of storing motor vehicles up to 6,000 lbs." (See Exh. "C", pg. 8, para. 6.5b Software and Systems Description, attached to Agreement as Schedule A).

25.     Pursuant to the Agreement, in consideration for the design, sale, license, and installation of the Parking System, BUYER agreed to pay the total amount of $2,356,050.00 upon completion of the Project. The payment schedule is set forth in Schedule C of the Agreement. (See Exh. "C", Sect. 2.1 and 2.2).

26.     The intended completion date and system handoff of the Parking System project was scheduled for August, 2010. (See Exh. "C", p. 35 Schedule F).

27.     The parties agreed that upon the completion of the Parking System, the BUYER would be granted the right and license to use the SELLER's software and all other patents and copyrights owned by SELLER. (See Exh. "C", Sect. 4.1).

28.     As of today's date, the SELLER has failed to create a Parking System in compliance with its representations and obligations.

29.    As a result of the SELLER's failure to design, sell, license, and install the agreed upon Parking System, BUYER has incurred substantial damages.

## COUNT I: FRAUD IN THE INDUCEMENT

30.    BUYER re-alleges and reasserts Paragraphs 1 through 29 as if fully set forth herein.

31.    SELLER intentionally made false and misleading statements of material fact to BUYER for the purpose of inducing BUYER to enter into the Agreement for the purchase of the Parking System.

32.    To induce BUYER to enter into the Agreement and purchase the Parking System, SELLER knowingly made the following misrepresentations:

> a. SELLER has key personnel with an extensive, demonstrated track record in engineering, fabricating, installing and supporting hundred of pieces of complex automated equipment in 28 countries around the world who could create the automated parking facility as contemplated by the parties.

> b. SELLER had "qualified" designers and contractors to design and install the Parking System.

> c. SELLER would maintain the software necessary to operate the Parking System.

> d. The Parking System would be ADA compliant.

> e. SELLER has reliable technology used by SELLER in manufacturing, warehouse automation and amusement ride

9

industries for which it will base its technology for the Parking System.

f. The entire Parking System could be completed within ninety days.

g. The Parking System would yield 130 to 140 parking spaces.

h. The Parking System would be capable of storing and retrieving 60 vehicles per hour.

i. The Parking System would be equipped with four operable shuttles.

j. The Parking System would be equipped to park sport utility vehicles.

k. SELLER would provide trained staff for the operation and maintenance of the Parking Garage.

l. SELLER would design a system so that no one piece of machinery would fail or shut down the system.

m. SELLER would modify its systems to accommodate the BUYER's space constraint requirements.

33.     SELLER made each of the representations with full knowledge that they were false and that SELLER was not capable of performing any of these promises.

34.     SELLER made the false representations for the purpose of inducing BUYER to rely upon the false statements and enter into the Agreement with SELLER for the purchase of the Parking System.

10

35.     SELLER also made the false representations for the purpose of profiting and benefitting SELLER with no regard for the false representations concerning the SELLER's qualifications and capabilities.

36.     The intentional false representations by the SELLER were material to the BUYER's decision to enter into the Agreement with the SELLER.

37.     BUYER justifiably relied upon the misrepresentations of the SELLER to its detriment as BUYER was induced by the representations to enter into the Agreement with the SELLER for the purchase of the Parking System that SELLER could not create, and as a direct and proximate result, BUYER has been damaged by SELLER for monies paid to SELLER for the Parking System as well as lost profits in connection with the Parking System, in excess of $15,000.00.

38.     BUYER has been obligated to retain undersigned counsel and pay a reasonable fee for its services, for which SELLER is liable pursuant to Section 11.10b of the Agreement.

WHEREFORE, the Plaintiffs BUYER demand judgment in its favor and damages against Defendant SELLER in excess of $15,000.00 together with attorneys fees, court costs and any other relief this Court deems just and proper.

## COUNT II: EQUITABLE RESCISSION - FRAUD

39.     BUYER re-alleges and reasserts Paragraphs 1 through 29 as if fully set forth herein.

11

40.    On October 26, 2009, BUYER and SELLER entered into a valid, enforceable Agreement for the design, engineering, and installation of the automated Parking System.

41.    To induce BUYER to enter into the Agreement and purchase the Parking System, SELLER knowingly made the following misrepresentations:    .

      a.  SELLER has key personnel with an extensive, demonstrated track record in engineering, fabricating, installing and supporting hundred of pieces of complex automated equipment in 28 countries around the world who could create the automated parking facility as contemplated by the parties.

      b.  SELLER had "qualified" designers and contractors to design and install the Parking System.

      c.  SELLER would maintain the software necessary to operate the Parking System.

      d.  The Parking System would be ADA compliant.

      e.  SELLER has reliable technology used by SELLER in manufacturing, warehouse automation and amusement ride industries for which it will base its technology for the Parking System.

      f.  The entire Parking System could be completed within ninety days.

      g.  The Parking System would yield 130 to 140 parking spaces.

      h.  The Parking System would be capable of storing and retrieving 60 vehicles per hour.

12

i.   The Parking System would be equipped with four operable shuttles.

j.   The Parking System would be equipped to park sport utility vehicles.

k.   SELLER would provide trained staff for the operation and maintenance of the Parking Garage.

l.   SELLER would design a system so that no one piece of machinery would fail or shut down the system.

m.   SELLER would modify its systems to accommodate the BUYER's space constraint requirements.

42.   SELLER made each of the representations with full knowledge that they were false and that SELLER was not capable of performing any of these promises.

43.   SELLER intentionally failed to disclose to BUYER and concealed from BUYER the fact that SELLER was not qualified or capable of complying with the representations SELLER made for the purpose of inducing BUYER to enter the Agreement.

44.   The intentional false representations by the SELLER, and the SELLER's intentional failure to disclose to BUYER that it did not possess the qualifications, knowledge, or capability of complying with SELLER's representations, were material to the BUYER's decision to enter into the Agreement with the SELLER.

45.   But for SELLER's concealment of its actual qualifications, knowledge, and capabilities, and for SELLER's false representations regarding

13

its qualifications, knowledge and capabilities, BUYER would not have entered into the Agreement with SELLER.

46.    As a direct and proximate result of BUYER's intentional concealment and intentional misrepresentation of material facts, SELLER has suffered damage which mere legal relief cannot remedy.

47.    Complete restoration of the status quo is impracticable for they BUYER as the BUYER's parking facility has been irreparably altered and modified as a direct consequence of the SELLER's conduct; the BUYER's reputation and relationships with third parties, including the tenant of the Project, neighboring businesses, and the public in general, has been irreparably damaged as a direct consequence of the SELLER's conduct; and, the BUYER has lost those profits to which it otherwise was entitled had the SELLER been capable of complying with its representations and obligations pursuant to the terms and conditions of the Agreement, or the SELLER disclosed its actual abilities and qualifications and therefore allowed the BUYER to contract with any other, duly qualified competitor of SELLER's to construct the automated parking facility.

48.    BUYER is therefore entitled to and seeks the remedy of equitable rescission because merely undoing the Agreement between the parties and restoring the parties to the status quo before the Agreement was entered is insufficient to remedy the BUYER for all damages and loss the BUYER has incurred and suffered as a direct and proximate cause of the SELLER's fraudulent conduct by affirmative act and omission.

14

49.   BUYER has been obligated to retain undersigned counsel and pay a reasonable fee for its services, for which SELLER is liable pursuant to Section 11.10b of the Agreement.

WHEREFORE, the Plaintiffs BUYER demand judgment in its favor and the equitable relief of rescission, including the restoration of the parties to the status quo prior to entering the Agreement to the extent reasonably possible; damages sufficient to compensate the BUYER for the successful completion of the automated parking facility by a duly qualified competitor of the SELLER; and damages sufficient to compensate the BUYER for the damage to BUYER's reputation and loss of profit incurred as a direct result of SELLER's fraudulent acts and omissions, together with attorneys fees, court costs and any other relief this Court deems just and proper.

## COUNT III: RESCISSION - MUTUAL MISTAKE

50.   BUYER re-alleges and reasserts Paragraphs 1 through 29 as if fully set forth herein.

51.   On October 26, 2009, BUYER and SELLER entered into a valid, enforceable Agreement for the design, engineering, and installation of the automated Parking System.

52.   The Agreement between BUYER and SELLER included the material term that SELLER was to create an automated Parking System capable of parking 139 vehicles in any one of 140 "storage spaces". (See Exh. "C", pg. 10, Schedule A: Software and Systems Description).

15

53.     The Agreement between the BUYER and SELLER also included a specific provision for the inclusion of "at least 1 storage space...capable of storing an ADA compliant van". (See Exh. "C", pg. 10, Schedule A: Software and Systems Description).

54.     The BUYER and SELLER each intended for the Agreement to include their mutual agreement and understanding that the automated Parking System would be configured and constructed in a manner capable of parking 139 vehicles at a single time and in complete compliance with all applicable laws, ordinances and regulations including the Americans with Disabilities Act (hereinafter "ADA").

55.     The failure of the Agreement between the BUYER and SELLER to memorialize their mutual agreement and understanding that the SELLER will configure and construct the automated Parking System in a manner capable of parking 139 vehicles at a single time while at the same time, remaining in compliance with all applicable laws, ordinances, and regulations, including the ADA, was an inadvertent omission.

56.     The inadvertent omission of the material term that was agreed to by both BUYER and SELLER constitutes a mutual mistake and the Agreement does not place any risk of the mistake upon the BUYER.

57.     The SELLER has failed to construct and configure the automated parking facility in a manner, which provides for the parking of 139 vehicles at a single time and in compliance with the obligations and requirements of the ADA.

58.     The inadvertent omission is material to the Agreement as the SELLER relies upon ADA compliance requirements as an excuse for not constructing or configuring the automated parking facility in a manner necessary to park 139 vehicles at a single time. Specifically, the SELLER attempts to excuse its otherwise material breach of the Agreement by relying on ADA compliance requirements as a reason for constructing the automated parking facility with fewer than 139 parking spaces.

59.     The BUYER hereby rescinds the Agreement and has no adequate remedy at law as a result of the mutual mistake as the mere award of damages alone is an insufficient remedy for the consequences of the mutual mistake.

60.     BUYER has been obligated to retain undersigned counsel and pay a reasonable fee for its services, for which SELLER is liable pursuant to Section 11.10b of the Agreement.

WHEREFORE, the Plaintiffs BUYER demand judgment in its favor and the equitable relief of rescission including the restoration of the parties to the status quo prior to entering the Agreement to the extent reasonably possible, together with attorneys fees, court costs and any other relief this Court deems just and proper.

## COUNT IV: BREACH OF CONTRACT

61.     BUYER re-alleges and reasserts Paragraphs 1 through 29 as if fully set forth herein.

62.     On October 26, 2009, BUYER and SELLER entered into a valid, enforceable Agreement for the design, engineering, and installation of the automated Parking System.

63.     SELLER has materially breached the Agreement for failing construct a Parking System in compliance with the terms and conditions of the Agreement.

64.     The SELLER's breach of the AGREEMENT is the direct and proximate cause of damage to the BUYER.

65.     BUYER has been obligated to retain undersigned counsel and pay a reasonable fee for its services, for which SELLER is liable pursuant to Section 11.10b of the Agreement.

66.     BUYER has been obligated to retain undersigned counsel and pay a reasonable fee for its services, for which SELLER is liable pursuant to Section 11.10b of the Agreement.

WHEREFORE, the Plaintiffs BUYER demand judgment in its favor and damages against Defendant SELLER in excess of $15,000.00 together with attorneys fees, court costs and any other relief this Court deems just and proper.

## COUNT V: SPECIFIC PERFORMANCE

67.     BUYER re-alleges and reasserts Paragraphs 1 through 29 as if fully set forth herein.

68.     The BUYER contracted with the SELLER for the construction of a state of the art, automated parking facility that was capable of housing 139 parked vehicles on a single occasion.

18

69.     The automated parking facility was unique to the area in which the BUYER contracted for the facility to be constructed, and its successful construction and operation consistent with the representations made by the SELLER in the Agreement would have provided the BUYER with a uniquely competitive marketing and business advantage over similar businesses within the same geographical area.

70.     The BUYER is clearly entitled to the benefit of the terms and conditions of its Agreement with the SELLER.

71.     The BUYER has at all times and continues to be ready, willing and able to tender its obligations under the Agreement with the SELLER.

72.     The SELLER's refusal to construct the parking facility in accordance with the promises, representations, obligations and requirements within the Agreement leaves the BUYER with no adequate remedy at law.

73.     Justice requires that the SELLER construct, or cause the construction, of the parking facility in accordance with the promises, representations, obligations and requirements within the Agreement.

74.     BUYER has been obligated to retain undersigned counsel and pay a reasonable fee for its services, for which SELLER is liable pursuant to Section 11.10b of the Agreement.

WHEREFORE, the Plaintiffs BUYER demand judgment in its favor and the equitable relief of specific performance, together with attorneys fees, court costs and any other relief this Court deems just and proper.

## COUNT VI: DECLARATORY JUDGMENT

19

75. BUYER re-alleges and reasserts Paragraphs 1 through 29 as if fully set forth herein.

76. Section 9.2 of the Agreement between BUYER and SELLER states the following:

> **Liability Limitation.** The Purchase price paid to Seller shall be the limit on Seller's liability to Buyer or any third party, whether found in contract or tort, (including, but not limited to, negligence), arising out of or resulting from, (i) this Agreement or the performance or breach thereof, or (ii) the design, manufacture, delivery, sale, repaid, replacement or use of the Systems.

77. A bona fide, actual, present practical need for the declaration exists where BUYER is in doubt about its rights under Section 9.2 and the extent to which its rights are affected by Section 9.2 of the Agreement. BUYER therefore seeks a determination of the validity and enforceability of Section 9.2 under the particular circumstances of this case.

78. BUYER contracted with the SELLER to create a state of the art, automated parking facility to be located in the heart of the "South Beach" area of Miami Beach, Florida, a highly popular and congested vacation, recreational, shopping, dining, and entertainment area with extremely limited parking opportunities.

79. A present controversy exists and the parties have adverse interests in the subject matter where BUYER has paid SELLER substantial sums of money to date but the automated parking facility has not been completed as the direct result of the SELLER's failure to perform its obligations under the Agreement. SELLER is also incapable of completing the facility or performing its obligations under the Agreement.

20

80. SELLER's work-product is located within the facility but it is inoperable and does not generate any revenue or profit as a parking garage or otherwise, and there are few businesses, if any, capable of completing the product in the condition left by SELLER.

81. The application of the liquidated damage clause, at most, provides BUYER with a refund of the purchase price, but leaves a facility that is inoperable and incapable of generating revenue or profit. Therefore, the refund is grossly disproportionate to the reasonably expected damages in the event of SELLER's breaches, and evidences that Section 9.2 was intended only to induce the full performance by the SELLER, rather than a fair liquidation of damages. Accordingly, enforcement of Section 9.2 is precluded as a matter of law.

82. The unique nature of the product and facility and the SELLER's inability to comply with its contractual obligations has turned the facility from a substantial, highly sought after real estate asset into a financial liability whereby the contractual limitation on the relief does not nearly make the BUYER whole and the BUYER is "stuck" with SELLER's performance without additional recourse. Accordingly, enforcement of the liquidated damages limitations within Section 9.2 is unconscionable.

83. Based upon the foregoing, BUYER seeks a declaratory judgment based upon the foregoing facts and the law applicable to such facts as it relates to the validity and enforceability of Section 9.2 under the particular circumstances of this case.

WHEREFORE, the BUYER respectfully requests this Court to declare that Section 9.2 of the Agreement is unenforceable as a matter of law, or in the alternative, the enforcement of Section 9.2 under the facts and circumstances of this case is unconscionable and therefore the paragraph may not be applied in any action between these parties.

## JURY TRIAL DEMAND

The Plaintiffs hereby demand a trial by jury of all issues so triable.

## PRAYER/DEMAND FOR ATTORNEY'S FEES

BUYER has retained undersigned counsel and has agreed to and is obligated to pay a reasonable fee for undersigned counsel's services in representing it in this action. BUYER is therefore entitled to recover attorney's fees and court costs upon determination that it is the prevailing party in this lawsuit pursuant to Section 11.10b of the Agreement and/or as otherwise provided by law, including Fla. Stat. § 57.105, and any other relief this Court may deem just and proper.

Dated this 15th day of March, 2013.

By: _____
RONALD S. LOWY, ESQ.
Lowy and Cook, P.A.
501 N.E. First Avenue, Suite 200
Miami, FL 33132
Telephone: (305) 371-5585
Facsimile: (305) 371-5563
Florida Bar No. 501069
E-mail: rlowyesq@bellsouth.net
E-mail: ronlowy@lowypa.com
E-mail: elizabeth@lowypa.com

22

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CRESCENT HEIGHTS R & D, LLC,
a Foreign limited liability company, and
IC, LLC, a Florida limited liability company,

      Plaintiffs,                        CASE NO. 13-09625 CA 20

vs.

BOOMERANG SYSTEMS, INC.,
a Foreign for profit corporation,

      Defendant.

_____/

## PLAINTIFFS' MOTION TO FILE DOCUMENTS UNDER SEAL

COMES NOW, the Plaintiffs, CRESCENT HEIGHTS R&D, LLC, and IC, LLC, (hereinafter collectively referred to as "BUYER"), by and through the undersigned counsel and pursuant to Rule 2.425 of the Florida Judicial Administration Rules, hereby files and serves this Motion to File Documents Under Seal.

1.    On this date, BUYER filed a Complaint against Defendant, BOOMERANG SYSTEMS, INC. (hereinafter referred to as "SELLER"), with counts for Fraudulent Inducement, Rescission-Fraud, Rescission-Mutual Mistake, Breach of Contract, Specific Performance and Declaratory Judgment.

2.    The relationship between the parties arises out of a contract whereby BUYER retained SELLER to construct a state of the art, fully automated, parking garage located in Miami Beach, Florida.

3.    The allegations and counts within the Complaint are substantially based upon representations by SELLER that it developed and created unique methods and

processes for creating and constructing the automated parking facility contracted for by BUYER, which SELLER considers to be proprietary and confidential.  In addition, the SELLER represented that it had created unique software programs which would automate the parking facility functions.

4.     Accordingly, on October 26, 2009, the parties entered into an "Agreement for Design-Build Installation of Automated Parking Facility and Software License Between Boomerang Systems, Inc. and Crescent Heights R & D, LLC" (hereinafter referred to as the "Agreement").

5.     The SELLER, however, has not performed its obligations pursuant to the Agreement and after significant efforts to assist and accommodate the SELLER to perform the BUYER has concluded that the SELLER is not capable of performing its obligations, nor was the SELLER ever in fact qualified or capable of performing its obligations within the AGREEMENT.

6.     In an explicit effort to avoid the publication and dissemination of information which the SELLER contends is unique, proprietary and/or confidential business information of the SELLER, the BUYER filed the Complaint without attaching the exhibits referred to within the pleading, and herein seeks to file all such documents under seal.   (See ¶7 of Complaint, "BUYER seeks to submit all exhibits referenced herein to the Court under seal to maintain any confidential, proprietary information contained therein. Accordingly, BUYER shall file a motion requesting that the Court enter an order instructing the Clerk of the Court to file all exhibits to this Complaint under seal.").

7.     The BUYER however, will serve copies of all exhibits referenced within the Complaint directly upon the SELLER.

WHEREFORE, the Plaintiff, CRESCENT HEIGHTS R&D, LLC., respectfully requests this Court to Grant this Motion to File Documents Under Seal, and direct the clerk of court to accept the filing of all contracts, agreements, schedules, modifications and addendums to the contracts and agreements between the parties under seal.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and complete copy of this Plaintiffs' Motion to File Documents Under Seal was served upon the Defendant, BOOMERANG SYSTEMS, INC., with the Summons and Complaint served in this action.

LOWY AND COOK, P.A.
501 N.E. 1st Avenue, Suite 200
Miami, Florida 33132
Telephone: (305) 371-5585
Facsimile: (305) 371-5563
Email: rlowyesq@bellsouth.net
Email: leah@lowypa.com
Email: elizabeth@lowypa.com

By: _____
RONALD S. LOWY, ESQUIRE
Florida Bar No. 501069

3